IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JONELANE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-576-STE |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

I.  **PROCEDURAL BACKGROUND**

On October 21, 2015, Plaintiff filed for disability insurance benefits and supplemental security income. (TR. 12). On June 7, 2016, Ms. Williams applied for disabled widow's benefits. (TR. 12). Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for disability insurance benefits and

supplemental security income. (TR. 12). Subsequent to Ms. Williams' request for an administrative hearing, her claim for disabled widow's benefits was escalated to the hearing level to be heard in conjunction with her other claims. (TR. 12). Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision on all three claims. (TR. 12-23). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920.[1] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 21, 2015, her alleged onset date. (TR. 15). At step two, the ALJ determined that Ms. Williams had the following severe impairments: obesity and disorder of the lumbar spine. (TR. 15). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 18).

At step four, the ALJ concluded that Ms. Williams had retained the residual functional capacity (RFC) to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can frequently stoop, crouch, and crawl. (TR. 19).

At the administrative hearing, a vocational expert (VE) described Ms. Williams' past relevant work as site manager, (performed at the sedentary level)[2] and transportation

---

[1] Additional requirements must be met by a claimant seeking disabled widow's benefits. *See* 20 C.F.R. § 404.335. The ALJ concluded that Ms. Williams met the non-disability requirements for widow's benefits, TR. 15, and the Commissioner does not contest this finding. *See* ECF No. 21.
[2] *See* 20 CFR 404.1567(a) and 416.967(a).

2

director, (performed at the light level).[3] The VE also testified that an individual with Ms. Williams' RFC could perform these jobs. (TR. 66). Accordingly, at step four, the ALJ concluded that Ms. Williams was not disabled based on her ability to perform her past work. (TR. 22-23).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in her consideration of Ms. Williams' urinary incontinence and subjective allegations.

## V. ERROR IN THE CONSIDERATION OF PLAINTIFF'S URINARY INCONTINENCE

At the December 21, 2016 administrative hearing, Plaintiff testified that she suffered from urinary incontinence which had "gotten worse over the last two or three

---

[3] *See* 20 CFR 404.1567(b) and 416.967(b).

years." (TR. 59). According to Ms. Williams, upon complaints of the incontinence worsening, doctors prescribed medication. (TR. 59). Indeed, the record reflects that Plaintiff's physician prescribed Oxybutynin for the incontinence on March 6, 2016. (TR. 507). Even with medication, however, Plaintiff testified that she suffered "accidents" 3-4 times per week. (TR. 60).

At step two, the ALJ concluded that the incontinence was not a severe impairment. (TR. 16). In doing so, the ALJ provided four rationales:

- Plaintiff wore protective undergarments only "sometimes," because she was unable to afford the same;

- Plaintiff failed to report symptoms until April 2016;

- In September 2016, Plaintiff reported that her medication was effective in controlling her symptoms; and

- Plaintiff stated that her medication had not increased, despite her allegations that the incontinence had worsened over a period of 2 to 3 years.

(TR. 15-16). Ultimately, at step two, the ALJ stated that the incontinence was "non-severe in nature, as there is no indication that [Plaintiff] would have more than mild, if any work-related limitations secondary to same." (TR. 16). Thereafter, the ALJ made no further mention of Plaintiff's incontinence and did not include any work-related limitations for the impairment in the RFC.

Ms. Williams' argument regarding the ALJ's consideration of the urinary incontinence is two-fold: (1) that the ALJ erred in failing to find the urinary incontinence as a severe impairment at step two and (2) that the ALJ erred by failing to consider the

incontinence or include any related limitations at step four. (ECF No. 17:14-17). The Court rejects the step two argument, but concludes that the ALJ erred at step four.

### A. Step Two

Plaintiff argues a lack of substantial evidence supporting each of the ALJ's rationales for deeming the incontinence as "non-severe." (ECF No. 17:14-17). But even assuming the truth of Ms. Williams' argument, such error would be deemed harmless based on the ALJ's finding of additional severe impairments at step two. "[O]nce an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency 'will consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Barrett v. Astrue,* 340 F. App'x 481, 484 (10th Cir. 2009) (quoting 20 C.F.R. § 404.1523). Consequently, the undersigned "can easily dispose of" Plaintiff's step-two challenge. *Oldham v. Astrue,* 509 F.3d 1254, at 1256 (10th Cir. 2007). *See Brescia v. Astrue,* 287 F. Appx 626, 629 (10th Cir. 2008) ("Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as 'severe' at step two does not constitute reversible error....).

### B. Step Four

At step four, Plaintiff: (1) alleges that the ALJ failed to consider the effect(s) of the urinary incontinence on the RFC even though it was considered a non-severe impairment, and (2) contends that the ALJ erred in failing to include any work-related limitations in the RFC owing to the impairment. The Court agrees with Plaintiff's first proposition which

5

will necessarily mandate a reconsideration of the impairment at step four. Accordingly, the Court refrains from determining whether the RFC should have included any work-related limitations, as this determination may be affected on remand.

In formulating the RFC, the ALJ must discuss the combined effect of *all* the claimant's medically determinable impairments, both severe and non-severe. *See Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013). As Ms. Williams asserts, the ALJ erred under *Wells*. *See* ECF No. 17:12.

In *Wells*, the ALJ had made a step-two finding that the plaintiff's mental impairments were not severe. *Wells*, 727 F.3d at 1068. The ALJ then stated: "[t]hese findings do not result in further limitations in work-related functions in the [RFC] below." *Id.* at 1069 (brackets in original). The Tenth Circuit Court of Appeals stated that the ALJ's language "suggest[ed]" that he may have relied on his step-two findings to conclude that the plaintiff had no limitations at step four based on mental impairments. *Id.* at 1069. If so, the Court stated, such a conclusion would be considered "inadequate under the regulations" because the RFC analysis at step four required "a more detailed assessment" "describing how the evidence *supports each conclusion*, citing specific medical facts." *Id.* (emphasis in original).

Here, at step two, the ALJ concluded that the incontinence was "non-severe in nature, as there is no indication that [Plaintiff] would have more than mild, if any work-related limitations secondary to same." (TR. 16). Beyond this statement, however, the ALJ failed to further discuss the effect of the incontinence on the RFC at step four, instead, relying on the summary conclusion at step two. In the absence of further findings or

discussion at step four, the Court concludes that the ALJ's step two summary conclusion was inadequate under *Wells* and remand is warranted. *Wells*, 727 F.3d at 1071 (finding error "to the extent the ALJ relied on his finding of non-severity as a substitute for [an] adequate RFC analysis[.]"). On remand, the ALJ will consider the effect of the urinary incontinence on the RFC—whether it be deemed a severe or nonsevere impairment. Accordingly, at this time, the Court refrains from determining whether additional limitations would be warranted in the RFC. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.)

## VI. ERROR IN THE CONSIDERATION OF PLAINTIFF'S SUBJECTIVE ALLEGATIONS

The record contains evidence Plaintiff was treated for chronic pain from December 2013 through December 2017. (TR. 795-860). At the administrative hearing, Plaintiff testified that her pain rendered her unable to work and caused her:

- difficulty in standing;

- an inability to sit for longer than 10 minutes at one time before having to change positions; and

- the need to recline for more than half of the day in an effort to alleviate the symptoms.

(TR. 36, 47-48, 60-61). Ms. Williams alleges that the ALJ omitted, mischaracterized, and selectively reviewed evidence in evaluating Plaintiff's subjective allegations, which ultimately undermined the RFC. (ECF No. 17:17-30). The Court agrees.

## A.   ALJ's Duty to Evaluate Plaintiff's Subjective Symptoms

Social Security Ruling (SSR) 16-3p provides a two-step framework for the ALJ to consider a claimant's symptoms, including pain, and determine the extent to which the symptoms are consistent with the evidence in the record. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At step two, the ALJ will examine the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;

- The location, duration, frequency, and intensity of pain or other symptoms;

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

8

*Id.*, at *7. Finally, SSR 16-3p directs the ALJ to determine the consistency of the individual's statements as compared to other evidence in the record. *Id.*, at *4-10. In evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. SSR *Id.*, at *9.

### B. The ALJ's Consideration of Ms. Williams' Subjective Allegations

In evaluating Ms. Williams' subjective allegations, the ALJ stated:

[T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

In terms of the claimant's alleged impairments and resulting functional limitations, the undersigned finds the claimant's testimony and prior statements to the Administration not fully consistent with the objective medical evidence of record for a number of reasons, discussed in greater depth below. Instead, the residual functional capacity reached herein is consistent with the objective medical evidence, clinical findings, longitudinal medical history, and observations of the claimant's treating and examining providers during this time. As well, the evidence of record does not support the claimant's allegation of greater restriction and symptomology.

(TR. 20). The ALJ discounted Plaintiff's subjective allegations, finding:

- Objective evidence "found no central canal stenosis or impingement which could account for [Plaintiff's] purported extreme symptomology;"

- Generally "unremarkable" physical examinations, "noting only tenderness to palpation of the spinous process at L3-5 at times but otherwise finding full muscle strength and a normal gait;"

9

- Plaintiff had "denied having explored other options for the repair or replacement of [Plaintiff's dorsal spine stimulator]" which had not worked for over five years;

- Plaintiff had "refused to see a pain specialist or to be placed on a stronger narcotic medication;"

- Plaintiff had reported pain management from Tramadol to the extent that she was able to perform activities of daily living;

- Reports from January-April 2016 had noted that medication had been effective in controlling Plaintiff's pain; and

- A December 2016 report noting that Plaintiff had reported that "Tramadol helped to relax her and cut her pain by 50%."

(TR. 20-21).

### C. Error in the Consideration of Plaintiff's Subjective Allegations

The Court concludes, as Ms. Williams has asserted, that the ALJ's rationales were selective and misleading, and that the ALJ mischaracterized evidence relevant to Plaintiff's allegations of pain. On this basis, the Court finds a lack of substantial evidence exists to support the ALJ's evaluation of Plaintiff's subjective allegations, and remand is warranted.

First, citing an October 2016 x-ray and a November CT scan of Plaintiff's lumbar spine,[4] the ALJ stated that "objective studies" had "found no central canal stenosis or impingement which could account for [Plaintiff's] purported extreme symptomology." (TR. 20). But as noted by Ms. Williams, the ALJ's statement is incorrect. A December 2014 CT scan shows "borderline central canal narrowing" in Plaintiff's lumbar spine. (TR. 475). Although this report pre-dated the period of disability, the findings were relevant

---

[4] The AJ also cited "Exhibit 2F"—without reference to a page cite—but this exhibit contains 92 pages of information and the Court is unable to discern the ALJ's specific reference.

and should have been considered by the ALJ. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ).

Furthermore, the ALJ should not have relied on the absence of central canal stenosis to discount Plaintiff's allegations of pain in light of the other objective findings found in the October 2016 x-rays (assessing moderate osteoarthritis in Plaintiff's thoracolumbar spine)[5] and the November 2016 CT scan (assessing disc bulges and facet osteoarthropathy at L4-5 contributing to moderate left and mild right neural foraminal stenosis at both levels).[6] *See Kellams v. Berryhill*, 696 F. App'x 909, 916 (10th Cir. 2017) (noting that the ALJ should not have relied on the absence of "evidence of severe stenosis" in light of other objective findings which undermined this conclusion which the ALJ failed to discuss).

Second, citing visits to her primary care physician in September, October, November, and December, the ALJ cites "generally unremarkable" physical examinations, "noting only tenderness to palpation of the spinous process at L3-5 at times but otherwise finding full muscle strength and a normal gait." (TR. 20). This rationale omits findings and mispresents the record. On each of the visits relied on by the ALJ, there are no findings regarding "full muscle strength and normal gait." *See* TR. 796, 815, 818, 820.

---

[5] (TR. 724).

[6] (TR. 755).

Instead, and in addition to "tenderness to palpation of the spinous process at L3-5," which the ALJ concedes could cause some pain, the cited records contain diagnoses of: "chronic lower back pain," "chronic pain syndrome," and "complex regional pain syndrome type 1." (TR. 796, 815, 818, 820). But the ALJ omits these findings, and doing so was improper. *See Kellams,* 696 F. App'x at 915 (noting that An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence" in assessing Plaintiff's credibility) (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)) (internal quotation marks omitted).

Third, the ALJ stated that Ms. Williams had "denied having explored other options for the repair or replacement of her dorsal spine stimulator" which had not worked for over five years. (TR. 20). Although the ALJ had acknowledged that Plaintiff "went for a period of time without insurance,"[7] the ALJ does not connect that finding to the non-working device. Instead, the ALJ simply states that Ms. Williams "had been told that the doctor who implanted [the device] was no longer practicing; however, she denied having explored other options for the repair or replacement of this device." (TR. 20). But evidence shows that the lack of insurance was the precise reason that Plaintiff had not had the device repaired or replaced. *See* TR. 410 (noting that although Ms. Williams suffered from "significant" "pain in the lower back and numbness and tingling in bilateral feet" and "pain [with spasms] radiating down both legs," "[s]he has been unable to see a specialist for the neurostimulator implanted in her back as she doesn't have insurance now."); TR. 497 ("[Plaintiff] has a nerve stimulator placed that no longer works and due

---

[7] (TR. 20).

12

to lack of insurance she has been unable to get this looked at."); 703 ("[Plaintiff] had a stimulator implanted that no longer works. She has no insurance and is unable to have this replaced.").

Thus, the Court concludes that ALJ erred in failing to account for Ms. Williams' lack of financial ability while discounting her subjective allegations regarding the repair or replacement of the device. *See Kellams*, 696 F. App'x at 916 (holding that an ALJ improperly discredited a claimant for failing to explore a particular treatment option when the record contained evidence that the claimant could not afford the particular treatment and the ALJ had omitted discussion of the same). Furthermore, in response to the ALJ's specific question to Ms. Williams regarding whether she was "trying to explore ways to find someone [] to [repair or replace the device]," Plaintiff replied "Yes, I did. When I had insurance." (TR. 43-44). And even when Plaintiff obtained "Sooner Care"—which provides medical assistance for low-income individuals, she explored *another* option—her primary care physician attempted to locate another clinic to help with the existing unit, but was unsuccessful in his attempt. *See* TR. 411.

Fourth, citing treatment notes from March, October, and December 2016, the ALJ stated that Plaintiff had "refused to see a pain specialist or to be placed on a stronger narcotic medication." (TR. 20). In March 2016, Dr. Robert Macknack noted that Plaintiff suffered from "constant cramps in the legs that cause discomfort when sitting, standing for a prolonged period of time" and that she had been "referred to pain management and decided not to return as she preferred to stay on the Tramadol." (TR. 827). In October 2016, Dr. Macknack echoed Plaintiff's choice for Tramadol over a stronger narcotic at a

13

pain management clinic, stating, "[Plaintiff] was referred to pain management but at this point prefers not to be on a stronger narcotic." (TR. 818). And in December 2016, although Dr. Macknack did state that Plaintiff "refused to see a pain specialist,"[8] a review of his prior records indicated that he had made this statement because Plaintiff had not wanted to take any narcotics stronger than the Tramadol. See TR. 818, 827.

SSR 16-3p states that an ALJ should consider that "[a]n individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms." SSR 16-3p, at *9. It appears that Ms. Williams had chosen to avoid a narcotic stronger than Tramadol, presumably owing to the side effects associated with the same. Yet the ALJ's statement made it appear as though Plaintiff had refused the only prescribed treatment available but was still alleging disabling pain. This type of misleading review is improper. See Sherman v. Apfel, 141 F.3d 1185 (10th Cir. 1998) (reversing, in part, based on ALJ's "selective and misleading evidentiary review" when evaluating Plaintiff's subjective allegations).

Fifth, the ALJ noted that in September 2015, Plaintiff had reported that her Tramadol helped manage her pain to allow her to perform activities of daily living. (TR. 837). Although the ALJ's statement was accurate, she may not rely on a claimant's minimal daily activities as substantial evidence that she does not suffer disabling pain. Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).

Sixth, the ALJ relied on treatment records from January-April 2016, noting that Plaintiff had allegedly reported that her medications had been effective in controlling her

---

[8] (TR. 795).

pain. (TR. 20-21). In reaching this conclusion, the ALJ has again omitted critical portions of the cited records. In the February 2016 report, the physician noted: "[Plaintiff] reports she is well controlled on her current regimen." (TR. 829). But the record is unclear whether Plaintiff was referring to pain, as the notation did not specifically reference pain and Plaintiff was taking 15 medications for various ailments. (TR. 829). That same record, however, noted that Plaintiff had chronic back pain, with "sharp pains shooting through her feet when she stands up … 8-10 times a day." (TR. 829).

In March 2016, the ALJ accurately reported a statement in the medical evidence that Ms. Williams' back pain had remained "stable." (TR. 20, 827). The ALJ's omission of other information contained in that record leads the reader to believe that a report of "stable" had somehow equated to a finding that Plaintiff's pain was minimal or well-controlled. However, the same record revealed that Ms. Williams was "still in significant pain … despite taking the Tramadol 4 times daily. … She has constant cramps in the legs that cause discomfort when sitting, standing for prolonged time." (TR. 827). Finally, although the ALJ stated that in April 2016, Plaintiff had reported that her "medications were effective," that same record also stated that Plaintiff suffered from low back pain throughout the day and the medication would wear off in 3-4 hours. (TR. 20-21, 825).

Finally, the ALJ relied on a December 2016 report noting that Plaintiff had stated that "Tramadol helped to relax her and cut her pain by 50%." (TR. 21). The ALJ's statement is accurate, but that record also stated that Ms. Williams was "unable to stand for … over 5 minutes before she has to lay back down. Her pain is not controlled with

Tramadol[.]" (TR. 795). But the ALJ failed to report these findings and the selective review is impermissible. *See supra*, *Sherman*.

In sum, the Court concludes that the ALJ's rationales for discounting Ms. Williams' pain were misleading, and that the ALJ mischaracterized the evidence and engaged in improper selective review. Accordingly, the evaluation of Plaintiff's subjective allegations is not supported by substantial evidence and remand is warranted.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on January 25, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE